## WILLIAMS v. SLAUGHTER.

No. 21251. Opinion Filed Sept. 20, 1932.

Rehearing Denied Oct. 18, 1932.

Williams & Cowan and Magee & Sturdevant, for plaintiff in error.

George Allen and Luttrell & Holland, for defendant in error.

HEFNER, J. This is an action brought by Myrtle Williams in the district court of Cleveland county against James Slaughter to recover damages because of an alleged breach of marriage promise. Defendant denied that he ever agreed to marry plaintiff. Trial was to a jury and resulted in a verdict in favor of defendant.

Plaintiff asserts that incompetent evidence was admitted to her prejudice and against her objection at the trial of the cause. Defendant, after testifying that he did not promise to marry plaintiff, further testified, over the objection of plaintiff, that he ceased paying her attentions for the reason that she kept company with a man by the name of Hopper. Several witnesses, over the objection of plaintiff, testified that they saw her in company with Hopper numerous times during the two years prior to the trial. Plaintiff testified, on cross-examination and over her objection, that Mr. Hopper frequently called upon her as an old friend of the family, but that she never recognized him as a sweetheart and that at the time defendant promised to marry her he had knowledge of her friendship with Hopper and that he frequently called upon her.

It is the contention of plaintiff that this evidence was inadmissible under a general denial. It is her contention that, if defendant had admitted the marriage agreement and pleaded such conduct on the part of plaintiff in justification of the breach thereof, the same would have been admissible; that defendant was seeking to prove an affirmative defense under general denial. We do not agree with this contention. The evidence was admissible as a circumstance bearing upon the question of the existence of the marriage agreement, and was therefore admissible under general denial. The trial court instructed the jury that such evidence could be considered by them for this purpose only. As so limited, the evidence was properly admitted.

Several witnesses testified on behalf of defendant, in answer to questions propounded to them by his counsel, that plaintiff kept company with other men for a period of two years prior to the date of trial. These answers, in part, included a period of time not covered by the alleged engagement. Plaintiff complains of this evidence. Under the evidence offered by plaintiff, the alleged marriage engagement was entered into about one year prior to the time of trial. The evidence as to plaintiff having kept company with other men should have been limited to this period. Schreckengast v. Ealy (Neb.) 20 N. W. 853. Plaintiff, however, did not take specific objection to these answers. She did not move to strike such portions thereof as were inadmissible. The judgment will not, therefore, be reversed because of the manner in which these questions were answered.

In the case of Booren v. McWilliams (N. D.) 145 N. W. 410, the court said:

"Other errors occurred in excluding some of the evidence offered by defendant to show that, during the time the plaintiff claimed to have been engaged to marry him, she had received other men as company. It is self-evident that her relations to other men during such time, and the consent or objection of the defendant thereto, might have had an important bearing on the weight to be given the testimony of plaintiff. If she was keeping company, during the period when she claims to have been engaged to marry defendant, with other men, and particularly if she was doing so with the knowledge of defendant and without objection on his part, it certainly would have a tendency to discredit her claim."

In the case of Bartholemew v. Billmeyer (Iowa) 198 N. W. 51, the following rule is announced:

"In an action for breach of marriage promise, evidence of the parties' conduct towards each other from the inception of the courtship, as well as during the alleged engagement, is admissible, if not too remote, to show whether such engagement existed."

In that case the court held that in an action for breach of promise plaintiff might properly be asked on cross-examination whether or not, during the period of time she claimed the engagement existed, she kept company with other men. It was there held that such evidence was a circumstance to be considered in determining whether the marriage agreement in fact existed.

Plaintiff next contends that the court erred in excluding certain evidence offered by her relative to the purchasing of a wedding dress at the request of defendant. The record does not bear out the contention of plaintiff that this evidence was excluded. The court permitted it to go before the jury.

Plaintiff also complains of the ruling of the court in excluding certain evidence offered by her relative to statements made to her by third parties relative to defendant's refusal to marry her. If admissible at all, this evidence was only admissible on the question of measure of damages, and since the jury found against plaintiff on the existence of the marriage agreement, this question becomes immaterial.

Plaintiff further urges that the court erred in overruling her motion for a new trial on the alleged ground of misconduct of one of the jurors. In support of this ground for new trial, counsel for plaintiff attached to the motion his affidavit in which he stated one of the jurors, after the trial, stated to him that he had seen plaintiff in company with Hopper on numerous occasions; that people of the community knew she was going with him, and it was a rotten deal; that from what he knew he could not render a verdict for plaintiff. The trial court committed no error in overruling the motion on this affidavit, as it was inadmissible for the purpose of establishing misconduct on the part of the juror. In the case of C., R. I. & P. Ry. v. Brown, 55 Okla. 173, 154 P. 1161, the court said:

"Statements made by a juror after the trial of a case to or in the presence of defendant's attorney, tending to show that such juror was an incompetent juror, cannot be shown by the testimony of such attorney."

On the hearing on this motion, plaintiff sought to introduce the evidence of one of the jurors that the statement mentioned in the affidavit was made by the juror. This evidence was excluded by the trial court, and this ruling is assigned as error. In Egan v. First Nat. Bank, 67 Okla. 168, 169 P. 621, the court said:

"Affidavits or testimony of jurors will not be received for the purpose of impeaching the verdict which they have solemnly made and publicly returned into court."

See, also, Oklahoma City v. Stewart, 76 Okla. 211, 184 P. 779; Hale v. Streeter, 91 Okla. 107, 216 P. 154; Stewart v. Ludlow, 127 Okla. 144, 259 P. 835; Tecters v. Frost, 145 Okla. 273, 292 P. 356.

Under these authorities, the testimony of jurors is inadmissible to impeach the verdict of the jury.

Plaintiff further contends that the court erred in refusing a certain instruction requested by her. This instruction relates to the measure of damages, and the jury having found against plaintiff as to the existence of the marriage agreement, the question of the measure of damages becomes immaterial and the judgment will not be reversed because of the refusal of the court to give the same. Martin v. C., R. I. & P. Ry. 7 Okla. 452, 54 P. 696; McKelvy v. Choctaw Cotton Oil Co., 72 Okla. 74, 178 P. 882. In the latter case the court held that where, in an action for breach of the contract, the jury finds in favor of defendant on the issue as to whether there was a breach, the giving of an erroneous instruction as to the measure of damages does not constitute reversible error.

The judgment is affirmed.

256

CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and RILEY, J., absent. CLARK, V. C. J., not participating.

Note.—See under (3) 1 R. C. L. 766; R. C. L. Perm. Supp. p. 204; 27 R. C. L. 896; R. C. L. Perm. Supp. p. 6005; R. C. L. Pocket Part, title "Verdict," § 68.