## TAYLOR v. RAY.

No. 26620. April 7, 1936.

Rehearing Denied May 5, 1936.

M. L. Holcombe, Ralph A. Barney, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, and Wayne Coulson, for plaintiff in error.

L. A. Justus, Jr., and James P. Devine, for defendant in error.

PHELPS, J. This is an action to recover for personal injuries sustained in an automobile collision. Plaintiff recovered, and defendant appeals. The sole contention on appeal is that plaintiff was negligent as a matter of law and that therefore it was error to permit the jury to pass upon the question of contributory negligence.

In the middle of the night the defendant left his truck standing somewhere near the center of a paved highway, with no lights burning. The tail light had not been in use for some time, the socket thereof being filled with dry mud and dirt. No warning signs were placed to the rear or front of the truck, nor any other precaution taken to safeguard the traveling public from such menace.

The plaintiff, a young man of great prom-ise, approached in an automobile from the rear and became a permanent invalid by crashing into the truck. The defendant now urges that if plaintiff had restricted the speed of the car to stopping distance within the range of his headlights the accident would not have occurred, and we are thereby asked to hold that plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff testified that he was traveling at a speed of about 25 or 30 miles per hour; that he could have stopped his car in about 25 feet; that his headlights shone for about 300 feet in front of him; that there was a hump or raised place in the pavement about 25 feet back of the parked truck, where formerly a railroad track had crossed the paving; that from this hump (whch threw his lights upward) on toward the truck the roadway inclined downward, so that he did not see the truck until he was within 15 feet of it; that he then attempted to swerve to his left around the truck but was unable by that time to do so.

Plaintiff was the only witness who testified concerning his speed and the condition of his headlights. Testimony of other witnesses who arrived immediately after the impact overwhelmingly established the position of the truck and the absence of its tail light as above explained. Photographs in the record show the front end of the automobile jammed into the left side of the rear end of the truck. A witness for defendant testified that by actual measurement the hump in the roadway was not more than two inches high. One photograph in the record would make it appear quite possible that the truck was parked on the forward slope of a slight incline at such position as to lessen its visibility to cars approaching from plaintiff's direction.

The theory of the defendant, and of the cases cited by him, is that it is a self-evident fact that one using due care to keep his car under control, which car is equipped with proper brakes and headlights, will not collide with a stationary unlighted object in the roadway, and therefore if he does collide with such object, he is guilty of contributory negligence as a matter of law. Before considering its applicability or inapplicability to the situation in the instant case, let us first consider the proposed rule itself, remembering that it is proposed as a rule of law as distinguished from a method of deductive reasoning with facts, for the purpose of determining the probable cause of a known effect.

The first objection to the proposed rule is that it permits the court to decide, instead of the jury, whether the average driver under ordinary circumstances, using ordinary care, so conducts himself as to satisfy the proposed rule. This in itself is a debatable question of fact. Does that hypothetical person by whom we measure ordinary care, drive his car in such manner as to harmonize merely with moving traffic, which is what may normally be expected upon the highway, or does he so drive it as to be able to stop instantly upon meeting unexpected and unwarned obstructions? The question is not what should the driver do, but what does the driver do, the average driver using ordinary care? That is the yardstick, the criterion, by which we determine whether the driver in the particular case was negligent, and until we determine the first we cannot determine the second. It is obvious that such decision is purely one of fact and not of law.

Having determined the standard, by the aid of the human experience and observation of the jurors, assisted by what evidence there may have been admitted on that issue, the next immediate task is to determine just what the driver did or failed to do. If the evidence as to what he did or failed to do be undisputed, there still remains the necessity of comparing this with what the driver of ordinary care would or would not have done under the same or similar circumstances. This comparison itself is but an incident in the ultimate determination of fact, and is therefore a function of the jury rather than the court.

Does chapter 113, section 14, Session Laws of 1933, prevent recovery by plaintiff in this case? It reads:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. * * *"

The trial judge gave to the jury a proper instruction on the issue of contributory negligence, couched in the language of the above statute, and the jury decided that issue in favor of the plaintiff. The strict interpretation of this statute which is urged by defendant would lead to some peculiar and novel results. Under it one could use the highway for a place of storage and never suffer in damages to others thereby; he could leave trucks and other impedimenta strewn along the highway, without any semblance of lights or other warning of death or serious injury to others using the highway; he could dig ditches across the highway at unexpected places; he could devise sundry other entrapments to encourage the prevalent carnage of blood and death attributable to such criminal stupidity,—and go free in damages because the injured party must be charged by rule of law with knowledge that others will use the highways illegally. We cannot conceive that the Legislature ever intended such result. To us "assured clear distance ahead" should be given a reasonable meaning, consonant with the purpose of the statute, which is not to encourage accidents, but to prevent them. The phrase contemplates a lawful use of the highway, not only by the driver who is sought to be charged, but also by those who would seek to charge him. It does not mean that the driver must proceed at his peril against those things which are not to be expected, thus arbitrarily burdening him with the highest degree of care against an illegal use by others, while at the same time imposing on him only the ordinary degree of care against a legal use by others.

Nor should we overlook the fact that just what is a "clear distance ahead" must in practice vary with almost every case, and that this is a question of fact. The length of headlight beams has of course nothing to do with it in day driving and is not all-controling in night driving, when it is constantly shifting in accord with the turns in the road and the suddenness thereof, or ascent or descent of the roadway, the presence of other traffic or the fact of blinding headlights from the opposite direction as well as a score of other factors. The clear distance of visibility may change suddenly from a long distance to virtually none at all, and vice versa.

When we speak of a "clear distance ahead" we must of necessity look through the driver's eyes, or at least at that which would be visible to him if he were looking. The clear distance, from the viewpoint of the driver, is as dependent on the natural visibility of the obstruction as its distance, if not more so. A mud bespattered unlighted stationary object such as the truck in the instant case may be hardly visible at night except at close range, while a red lamp the size of a dollar may be seen for a long distance. An unlighted object may so blend with the color of the roadway as to be almost invisible except at unreasonably close range, or it may so contrast therewith as to be visible at long range. If it be visible only at close range,

and the topography such that the beams of the headlight are temporarily thrown above or below it immediately before reaching it, it does not necessarily follow that the driver colliding with it was guilty of using a less degree of care than the law imposes upon him. We say, therefore, that the mere fact that a collision occurs under such circumstances is not, standing alone, conclusive of whether the driver was unduly speeding, and, even without our constitutional provision to the effect that contributory negligence shall always be a question of fact for the jury, does not and would not justify a court in setting aside the verdict of a jury thereon, if said verdict resulted from a consideration of all the other important facts and circumstances having a logical bearing on the question.

After all the prime question was the speed of plaintiff. The only direct evidence on this question was the testimony of plaintiff himself, who testified that his speed did not exceed 30 miles per hour. Whether that testimony was belied by the physical facts in the case, some of which are discussed above, was a question for the jury, who had the advantage of personal observation of the witnesses and actual inspection of the highway where the accident occurred. By the same token, had the jury come to the opposite conclusion, we would have felt bound by its finding, as in Cushing Refining & Gasoline Co. v. Deshan, 149 Okla. 225, 300 P. 312, which is strenuously urged by defendant as authority for his contention herein, and in which case there was direct evidence of the speed of the overtaking car independently of the fact of collision itself. In principles applicable to review of judgments there is no conflict between that decision and the views expressed herein.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and BUSBY, JJ., concur.